T.C. Summary Opinion 2015-7

UNITED STATES TAX COURT

JAMES E. KAMINSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21119-13S.                    Filed February 3, 2015.

James E. Kaminski, pro se.

<u>Lori A. Amadei</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $6,316 in petitioner's Federal income tax for 2010 and an accuracy-related penalty of $1,263 pursuant to section 6662(a). The deficiency is attributable to the disallowance of deductions for various expenses that petitioner claimed on Schedule C, Profit or Loss From Business. Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in California.

After concessions,[2] the issues for decision are whether petitioner is: (1) entitled to Schedule C deductions for vehicle expenses, travel expenses, and "Other" expenses in excess of amounts allowed by respondent and (2) liable for an accuracy-related penalty under section 6662(a).

_____

[1](...continued)
Code, as amended and in effect for 2010, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]The parties agree that petitioner is entitled to a Schedule C deduction for "Other" expenses of $3,624, comprising $256 for dues and subscriptions, $883 for parking, $215 for shipping, $670 for cellular phone charges, and $1,600 for commissions. The parties further agree that petitioner is entitled to a Schedule C deduction for meals and entertainment expenses of $4,519.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

## I. Petitioner's Business

Petitioner has worked as a financial adviser for about 15 years. He also spends a considerable amount of his free time coaching a high school football team.

Petitioner normally rises early and starts his workdays by watching television programs devoted to financial news and making phone calls to business associates on the East Coast. He then either commutes to an office that he maintains in Newhall (near Santa Clarita, California) or drives to meet with clients around Southern California.

## II. Tax Records

### A. Calendars

During 2010 petitioner recorded some of his business expenses on three calendars that he kept in his car. One calendar listed the towns that he visited and recorded the miles that he drove each day (location and mileage calendar). Petitioner recorded mileage on this calendar on all but eight days during the calendar year, including multiple stops on New Year's Day, Thanksgiving Day,

and Christmas Day. Petitioner testified that his clients were always open to discussing insurance and investments with him--even on holidays. According to this calendar, petitioner drove a total of 38,757 miles for business purposes in 2010.

On a second calendar petitioner listed the names of clients that he met with on days that he incurred meal and entertainment expenses (M&E calendar). Petitioner produced numerous receipts demonstrating to respondent's satisfaction that he is entitled to deduct $4,519 for business meals and entertainment in 2010.

On a third calendar petitioner listed the names of clients that he met with each day (client calendar). The client's name was followed by the letter "I" (indicating that petitioner provided investment advice) or "L" (indicating that he provided advice about life insurance).

A close comparison of the three calendars reveals numerous inconsistencies, and the calendars do not uniformly align with petitioner's other business records. For example, in several instances, the clients listed on the M&E calendar for a particular day do not match the client names that appear on the client calendar for the same day. Similarly, there are discrepancies between the location and mileage calendar and the receipts petitioner produced identifying the locations of the restaurants where he met with clients for business meals. Additionally, although

June 22, 2010, was one of the few days that petitioner did not record any mileage on the location and mileage calendar, the M&E calendar indicates that he met with a client to discuss investments and incurred meal expenses that day.

B. Verizon Wireless Statements

In 2010 petitioner paid $2,478 to Verizon Wireless for a so-called family plan covering four cellular phones. Petitioner used one of the phones, his two children each used a phone, and Kristen Jordan used the fourth phone. Petitioner explained at trial that Ms. Jordan was both a client[3] and close friend and that he talked with her by phone so often that it made sense to add her to his family plan.[4]

The record includes a few of petitioner's Verizon Wireless monthly billing statements. These statements show that most charges for additional Verizon Wireless services were generated by petitioner's children.

C. Time Warner

In 2010 petitioner paid $1,371 to Time Warner for telephone, cable television, and Internet access services at his residence. He paid approximately

---

[3]Petitioner's client calendar shows that he met with Ms. Jordan on approximately eight occasions in 2010.

[4]At the time of trial, petitioner was engaged to be married to Ms. Jordan.

$14 for telephone service, $43 for cable television, and $53 for Internet access each month.

Petitioner testified that in 2010 he used the telephone line only to send and receive facsimile transmissions related to his business and that he used the Internet service about 75% of the time for business purposes (e.g., to send and receive emails). Petitioner conceded at trial that he is not entitled to a deduction for Time Warner charges attributable to cable television services.

III. Tax Return

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for 2010. He reported income of $36,513 and total tax of $6,577.

Petitioner attached to his return two Schedules C related to his financial adviser business. On one Schedule C petitioner reported wage income of $3,839 and no expenses. On the other Schedule C petitioner reported gross receipts of $76,149 and total expenses of $43,475. Among other items, petitioner claimed deductions of $19,319 for vehicle expenses, $1,372 for travel expenses, and $7,836 for "Other" expenses.

Petitioner reported on Schedule C that he drove 38,637 miles for business purposes, and he applied the standard mileage rate of 50 cents per mile in

computing his vehicle expenses.[5] The "Other" expenses that petitioner reported on Schedule C included, inter alia, telephone and Internet charges of $4,476.

## IV. Tax Return Preparation

Petitioner relied on his longtime accountant, Jacques R. Behar, to prepare his tax return for 2010. Mr. Behar earned a bachelor of science degree from California State Northridge. Although he is not a certified public accountant, Mr. Behar passed the Internal Revenue Service (IRS) examination for enrolled agents in 1992 and has been in the business of preparing tax returns for nearly 40 years.

Mr. Behar testified that he prepared petitioner's tax return after reviewing his calendars, receipts for meals and entertainment expenses, and other records. After completing petitioner's tax return, Mr. Behar gave it to petitioner for review. Petitioner testified that he counted on Mr. Behar to prepare a complete and accurate return.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of

---

[5]The Commissioner generally updates the optional standard mileage rates annually. See sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate of 50 cents per mile for 2010 is set forth in Rev. Proc. 2009-54, sec. 2.01, 2009-51 I.R.B. 930, 930.

proving that the determination is incorrect.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[6]

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976); <u>Meneguzzo v. Commissioner</u>, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction.  <u>Cohan v. Commissioner</u>, 39 F.2d

---

[6]Petitioner does not contend that the burden of proof should shift to respondent pursuant to sec. 7491(a).

540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

I. Trade or Business Expenses

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. A deduction normally is not available, however, for personal, living, or family expenses. Sec. 262(a). Whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

Section 274(d) prescribes more stringent substantiation requirements before a taxpayer may deduct certain categories of expenses, including expenses related to the use of listed property as defined in section 280F(d)(4). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence corroborating his own statement, establishing the amount, date, and business purpose for an expenditure or business use of listed property. Sec. 1.274-5T(b)(6), (c)(1), Temporary Income Tax Regs.,

50 Fed. Reg. 46016-46017 (Nov. 6, 1985). Section 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46018 (Nov. 6, 1985), provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or similar record made at or near the time of the expenditure or use, along with supporting documentary evidence.

The term "listed property" includes passenger automobiles. Sec. 280F(d)(4)(A)(i). Section 1.274-5(j)(2), Income Tax Regs., provides that the strict substantiation requirements for vehicle expenses prescribed in section 274(d) must be met even where the optional standard mileage rate is used. Moreover, the Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

For taxable years beginning after December 31, 2009, cellular phones are no longer included in the definition of listed property in section 280F(d)(4), which was amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560. As a result of this change, cellular phones are no longer subject to the strict substantiation requirements of section 274(d).

A. <u>Vehicle Expenses</u>

Respondent allowed petitioner a deduction of $9,660 for vehicle expenses-- one-half of the amount he claimed for this item. Respondent asserts that petitioner failed to adequately substantiate vehicle expenses in excess of this amount. We agree.

Although petitioner's calendars are comprehensive in scope, they are not consistent with one another, as petitioner acknowledged they should be, and they do not uniformly align with his other business records. For example, in several instances the clients listed on the M&E calendar for a particular day do not match the clients listed on the client calendar for the same day. There are similar discrepancies between the location and mileage calendar and the receipts petitioner produced identifying the locations of the restaurants where he met with clients for business meals. In addition to these shortcomings, the Court is left with the strong impression that petitioner was somewhat liberal in treating social visits as business trips. Considering all the facts and circumstances, we conclude that petitioner has not adequately substantiated vehicle expenses in excess of the amount respondent allowed in the notice of deficiency. Accordingly, respondent's determination in respect of this item is sustained.

B.  Travel Expenses

Section 162(a)(2) allows a taxpayer to deduct travel expenses, including expenditures for meals and lodging, if the expenses are reasonable and necessary, incurred "while away from home", and made in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946).

Respondent disallowed the deduction that petitioner claimed on Schedule C for travel expenses of $1,372.  Petitioner acknowledged at trial that Holiday Inn charges of $267 were included in the deduction that he claimed (and respondent allowed) for meals and entertainment expenses.  Although petitioner stated that he also paid hotel expenses at a Hilton hotel in San Diego and vaguely mentioned that he stayed in Anaheim, he otherwise failed to show the business purpose for any overnight travel.  Under the circumstances, respondent's determination disallowing the deduction that petitioner claimed for travel expenses is sustained.

C.  "Other" Expenses

1.  Verizon Wireless

As previously mentioned, respondent allowed a deduction of $670 for cellular phone charges (representing 25% of the amount that petitioner paid to Verizon Wireless for cellular service for four phones, plus $50 that he paid to Asurion for cellular phone insurance).  Respondent determined that the balance of

the amount that petitioner paid to Verizon Wireless is a nondeductible personal expense. We agree.

Although petitioner suggested at trial that some portion of the monthly payments that he made to Verizon Wireless were for additional mobile data charges that he incurred in the course of his business, the limited number of Verizon Wireless monthly billing statements included in the record do not bear this out. Most of the charges for additional Verizon Wireless services were generated by petitioner's children. Inasmuch as petitioner does not dispute that his children and Ms. Jordan did not use their cellular phones in the furtherance of his business, we sustain respondent's determination limiting the deduction that he may claim for Verizon Wireless charges to $670 or 25% of the total amount paid for cellular services in 2010 (plus the $50 paid for cellular phone insurance).

### 2. Time Warner

In 2010 petitioner paid $1,371 to Time Warner for a combination of telephone, cable television, and Internet access services at his residence. Respondent disallowed the deduction that petitioner claimed for Time Warner charges in its entirety as a nondeductible personal expense. Although petitioner concedes that he is not entitled to a deduction in respect of the amount he paid for

cable television service, he does maintain (or at least questions) whether he may deduct any of the charges for telephone or Internet access services.

Petitioner testified that he used the telephone line exclusively to send and receive facsimile transmissions related to his business. Section 262(b) provides, however, that in the case of an individual, any charge for basic local telephone service with respect to the first telephone line provided to any residence shall be treated as a personal expense. Petitioner did not show that the telephone charge was for other than basic local service. It follows as a matter of law that petitioner is not entitled to a deduction for the portion of his Time Warner charges attributable to the telephone line.

The Court has characterized Internet access expenses as utility expenses. Verma v. Commissioner, T.C. Memo. 2001-132. Strict substantiation therefore does not apply, and the Court may estimate a taxpayer's deductible expenses provided that the Court has a reasonable evidentiary basis for making an estimate. Cohan v. Commissioner, 39 F.2d at 544; see Vanicek v. Commissioner, 85 T.C. at 742-743.

We have no reason to doubt petitioner's testimony that he used the Internet about 75% of the time for business purposes. On this record, we conclude that

petitioner is entitled to deduct $477 or 75% of the amount that he paid to Time Warner for Internet access services in 2010.[7]

## II. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20% of the amount of any underpayment of tax that is attributable to the taxpayer's negligence or disregard of rules or regulations or to any substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). An "understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

With respect to an individual taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring

---

[7]The $477 amount is the product of $53 (monthly charges) × 12 months × .75.

the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115. Assuming (as we do) that Rule 155 computations will show that petitioner substantially understated his income tax liability for the year in issue, respondent will have satisfied his burden of production.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on a tax professional may demonstrate that the taxpayer had reasonable cause and acted in good faith if: (1) the adviser was a competent professional with sufficient expertise to justify the taxpayer's reliance, (2) the taxpayer provided the adviser with necessary and accurate information, and (3) the

taxpayer actually relied in good faith on the adviser's judgment. 3K Inv. Partners v. Commissioner, 133 T.C. 112, 117 (2009); DeCleene v. Commissioner, 115 T.C. 457, 477 (2000). Status as an enrolled agent may tend to show competence as a tax professional. See Mortensen v. Commissioner, 440 F.3d 375, 388 (6th Cir. 2006), aff'g T.C. Memo. 2004-279. An enrolled agent is an individual who has displayed "special competence in tax matters". 31 C.F.R. sec. 10.4(a) (2007).

Mr. Behar is an enrolled agent, and he has prepared petitioner's tax returns for some time without any significant adjustments by the IRS. Even though there is room to question the degree to which Mr. Behar examined some of the records that petitioner produced to substantiate the deductions in dispute in this case, we conclude, on balance, that petitioner was justified in relying on him.

Despite some inconsistencies in petitioner's calendars related to his vehicle expenses, we conclude that he provided Mr. Behar with tax records that generally were accurate and complete. Recognizing that petitioner is not a tax expert, we believe that he relied on Mr. Behar in good faith.

Considering all the facts and circumstances, we conclude that there was reasonable cause for, and petitioner acted in good faith with respect to, the underpayment in this case. Sec. 1.6664-4(a), Income Tax Regs. Consequently, we hold that petitioner is not liable for an accuracy-related penalty for 2010.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
