**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-34

UNITED STATES TAX COURT

HARRY E. COLE AND DEBORAH L. COLE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14402-11S.                    Filed April 29, 2013.

Harry E. Cole and Deborah L. Cole, pro sese.

Nancy M. Gilmore, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income tax, additions to tax, and accuracy-related penalties for the years and in the amounts as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|-------------------------------|---------------------|
| 2006 | $9,640 | $1,408 | $1,928 |
| 2007 | 8,604 | --- | 1,721 |
| 2008 | 7,405 | 664 | 1,481 |

Petitioners filed a timely petition for redetermination with the Court pursuant to section 6213(a).  At the time the petition was filed, petitioners resided in Maryland.

---

[1]Section references are to the Internal Revenue Code (Code), as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

After concessions,[2] the issues remaining for decision are whether: (1) petitioners are entitled to deductions for casualty losses of $2,284 and $18,668 for 2006 and 2008, respectively, related to flooding in their basement; (2) petitioners are entitled to a deduction for a casualty loss of $18,818 for 2007 related to damage to their car; (3) petitioners are liable for accuracy-related penalties under section 6662(a) for the years in issue; and (4) Mrs. Cole is entitled to relief from joint and several liability under section 6015 for the years in issue.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by reference.

Petitioners were married in 1985 and have two adult children. Although petitioners testified at trial that they consider themselves to be separated, they have never been divorced or legally separated, and they continued to reside in the same household at all times relevant to this case.

---

[2]The parties agree that petitioners: (1) did not receive any rental income and they are not entitled to deduct any of the various expenses reported on Schedules C, Profit or Loss From Business, for the years in issue; (2) are not entitled to deductions of $28,434 and $9,460 for "other expenses" reported on Schedules A, Itemized Deductions, for 2007 and 2008, respectively; and (3) are entitled to claim one of their adult sons as a dependent and claim an education credit for his qualified tuition expenses for 2006. For the sake of clarity, other concessions are described in the text that follows. To the extent not discussed herein, other issues are computational and flow from our decision in this case.

During the years in issue neither petitioner was self-employed, and petitioners did not own any business or income-producing property.

Petitioners maintained separate bank accounts and shared household expenses. Mr. Cole made monthly mortgage payments while Mrs. Cole paid grocery, utility, and other expenses. Petitioners also maintained a joint credit union account which they used as a repository for tax refund checks. The funds in the credit union account were used for household expenses.

## I. Mrs. Cole's Education and Employment

Mrs. Cole graduated from high school and is working toward a bachelor's degree. From 1986 to 2006 she worked in the finance department at Bally Total Fitness, serving as a supervisor of telemarketers. She began to work in the customer service department for the Baltimore Orioles in 2007.

## II. Mr. Cole's Employment and Related Business Expenses

During the years in issue Mr. Cole worked as a railroad conductor and engineer for Norfolk Southern Corp. The parties stipulated that Mr. Cole qualified for "the special employee business expense rules for transportation workers" during the years in issue, and they agree that he is entitled to deductions for unreimbursed employee business expenses as follows:

| Year | Vehicle expenses | Parking/tolls | Meals[1] |
|------|------------------|---------------|----------|
| 2006 | $1,530 | $130 | $5,563 |
| 2007 | 675 | 130 | 2,754 |
| 2008 | 843 | 360 | 1,710 |

[1]The parties stipulated that the expenses for meals listed in this schedule represent Mr. Cole's expenditures "before the 50% reduction". Sec. 274(n)(1) prescribes the general rule that the amount allowable as a deduction for meal and entertainment expenses is limited to 50% of the amount of these expenses. However, consistent with the parties' stipulation that Mr. Cole qualifies for the special rule for transportation workers prescribed in sec. 274(n)(3), petitioners are allowed a deduction equal to 75% of these expenses for 2006 and 2007 and 80% of these expenses for 2008. Sec. 274(n)(3)(B). Consistent with the agreement of the parties, deductions that petitioners otherwise claimed for employee business expenses in excess of those set forth in the schedule are disallowed.

III. Flooded Basement

The basement in petitioners' home was damaged because of flooding in 2006 and 2008. Petitioners did not file a claim for reimbursement under their homeowner's insurance policy for the damage incurred in either 2006 or 2008. Petitioners instead filed suit against the City of Baltimore, asserting that the flooding was attributable to malfunctions in the City's main water line and seeking reimbursement of some or all of the damages. At the time of the trial in this case, petitioners' suit was still pending, and petitioners testified that they were actively prosecuting the case.

IV.  Damaged Mercedes

In 2001 petitioners purchased a preowned 1999 Mercedes-Benz (Mercedes). In February 2007 the Mercedes was damaged and petitioners received a payment of $15,376 from their insurance company for the "total loss" of the vehicle.  At the time petitioners submitted their insurance claim, the Mercedes had been driven 82,685 miles.  Petitioners failed to offer any evidence of their adjusted basis in or the fair market value of the Mercedes as of the date it was damaged in 2007.

V.  Tax Returns

On August 14, 2008, petitioners filed joint Federal income tax returns for 2006 and 2007.  The parties agree that petitioners have additional wage income of $10,603 and additional income tax withholding of $851 for 2006.  The record does not reflect whether the additional wage income is attributable to Mr. or Mrs. Cole or both of them.  Petitioners filed a joint Federal income tax return for 2008 on January 22, 2010.  Petitioners concede that they are liable for additions to tax under section 6651(a)(1) for late filing for 2006 and 2008.

Petitioners claimed deductions on Schedules A for casualty losses of $2,284 and $18,668 for 2006 and 2008, respectively, attributable to flood damage to their basement.  Petitioners claimed a deduction for a casualty loss of $18,818 on line 14 ("Other gains or (losses)") of their 2007 return.  Petitioners computed the loss,

which related to the damaged Mercedes, on section B of Form 4684, Casualties and Thefts, reserved for casualty gains or losses for business and income-producing property. Specifically, petitioners computed the $18,818 loss by subtracting $16,000 (approximate insurance reimbursement) from $34,818 (estimated adjusted basis).

Petitioners claimed refunds of $4,008, $4,721, and $4,751 on their returns for the taxable years 2006, 2007, and 2008, respectively.

## VI. Tax Return Preparation

Petitioners' tax returns for 2006 and 2007 were prepared by MBA Financial Services, and their return for 2008 was prepared by Okojie Associates, Inc. It was Mr. Cole's practice to deliver the couple's tax records to the return preparer and, after the returns were prepared, present them to Mrs. Cole for her signature. After the returns were prepared, petitioners routinely signed them without reviewing them in any detail. Although Mrs. Cole had never been introduced to the return preparer, she trusted that the returns were accurate.

## VII. Mrs. Cole's Claim for Spousal Relief

After filing the petition in this case, Mrs. Cole requested spousal relief under section 6015 for the years in issue. Respondent concedes that Mrs. Cole is entitled to relief from joint and several liability only in respect of so much of the

deficiencies, additions to tax, and accuracy-related penalties as is attributable to Mr. Cole's disallowed employee business expenses.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioners have not complied with the Code's substantiation requirements. Therefore, the burden of proof as to any relevant factual issue does not shift to respondent under section 7491(a). See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must substantiate deductions by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a

Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

I. Casualty Losses

Under section 165(a), a taxpayer generally is allowed as a deduction any loss sustained during the taxable year that is not compensated for by insurance or otherwise. However, in the case of an individual, and as is relevant here, section 165(c)(3) limits the deduction to losses of property arising from fire, storm, shipwreck or other casualty, or from theft. The amount of a casualty loss is generally the lesser of the taxpayer's adjusted basis in the property or the diminution in the fair market value of the property caused by the casualty.

Sec. 1.165-7(b)(1), Income Tax Regs.; see Lamphere v. Commissioner, 70 T.C. 391, 395 (1978) (and cases cited thereat).[3] In the case of a loss described in section 165(c)(3), the loss is allowed only to the extent that the amount of the loss arising from each casualty exceeds $100 and then only to the extent that the aggregate amount of such losses exceeds 10% of the taxpayer's adjusted gross income. Sec. 165(h)(1), (2)(A).

If, in the year of the casualty, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, the loss is not sustained until it can be ascertained with reasonable certainty whether such reimbursement will be received. Sec. 1.165-1(d)(2)(i), Income Tax Regs. Whether a reasonable prospect of recovery exists is determined by an examination of the facts and circumstances. Id. Whether reimbursement will be received may be ascertained with reasonable certainty, for example, by settlement, adjudication, or abandonment of the claim. Id.

---

[3] In determining the amount of loss deductible under section 165, the taxpayer's adjusted basis in the property is the amount of the adjusted basis prescribed in sec. 1.1011-1, Income Tax Regs., for determining the loss from the sale or other disposition of the property involved. Sec. 1.165-7(b)(1)(ii), Income Tax Regs.; see sec. 1.165-1(c)(1), Income Tax Regs. Also in determining the amount of loss deductible under sec. 165, fair market value generally shall be ascertained by competent appraisal. Sec. 1.165-7(a)(2)(i), Income Tax Regs.; see Gay v. Commissioner, T.C. Memo. 1980-19.

A.  Flood Damages

Petitioners claimed deductions for casualty losses related to damages sustained when their basement was flooded in 2006 and 2008.  However, petitioners filed suit against the City of Baltimore seeking reimbursement for those damages, and they confirmed at trial that the litigation is ongoing.

Given that petitioners continue to prosecute their claim against the City of Baltimore, and in the absence of any evidence suggesting that the prospect of a recovery is unlikely, they have not sustained a casualty loss and no loss can be calculated for 2006 or 2008 until it can be ascertained with reasonable certainty whether they will be reimbursed for the damages in question.  See id. Consequently, we sustain respondent's determination disallowing deductions for casualty losses for 2006 and 2008 related to flooding in petitioners' basement.

B.  Damaged Mercedes

Petitioners claimed a deduction for a casualty loss related to the damaged Mercedes.  Considering the parties' stipulation that petitioners did not own any business or income-producing property during the years in issue, it is clear that petitioners erred in computing the loss related to the Mercedes on Form 4684 and

reporting the item "above the line", i.e., on line 14 of their 2007 return.[4]  In any event, petitioners did not offer any evidence of their adjusted basis in or the fair market value of the Mercedes immediately before it was damaged that would permit the Court to accurately measure or even estimate the amount of the casualty loss (after accounting for petitioners' insurance recovery of $15,376).  It is well established that if a taxpayer fails to prove his or her adjusted basis in the property involved, no casualty loss is allowable.  Zmuda v. Commissioner, 79 T.C. 714, 727 (1982), aff'd, 731 F.2d 1417 (9th Cir. 1984).  On the record presented, we sustain respondent's determination disallowing the deduction for the casualty loss petitioners reported in 2007 in respect of the Mercedes.

## II. Accuracy-Related Penalties

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations.

---

[4]A deduction reported "above the line" is subtracted from gross income in computing adjusted gross income (AGI).  Sec. 62(a).  In contrast, "below-the-line" deductions (including itemized deductions and the standard deduction, see sec. 63(b), (d), (e)) are subtracted from AGI in computing taxable income.  Above-the-line deductions typically may be claimed in addition to itemized deductions or the standard deduction and offer the added benefit of reducing AGI which in turn is used as a measure to limit other tax benefits.  See, e.g., Calvao v. Commissioner, T.C. Memo. 2007-57, slip op. at 5 n.6.

The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Negligence also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. ____, ____ (slip op. at 40) (Aug. 2, 2012).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on a tax professional may demonstrate that the taxpayer had reasonable cause and acted in good faith where the taxpayer establishes that: (1) the adviser was a competent professional with sufficient expertise to justify the taxpayer's reliance; (2) the taxpayer provided the adviser with necessary and accurate information; and (3) the taxpayer actually relied in good faith on the adviser's judgment. 3K Inv. Partners v. Commissioner, 133 T.C. 112, 117 (2009); DeCleene v. Commissioner, 115 T.C. 457, 477 (2000).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Respondent has discharged his burden of production under section 7491(c) by showing that petitioners failed to keep adequate records and properly substantiate their claimed deductions. See sec. 1.6662-3(b)(1), Income Tax Regs.

Although petitioners relied on paid tax preparers, there is no evidence in the record regarding the preparers' respective experience or qualifications that would support the conclusion that petitioners reasonably relied on them. There is no indication that the preparers took the time to review the returns with petitioners, and petitioners admitted that they did not undertake to thoroughly review them on their own.

Taxpayers have a duty to review their tax returns before signing and filing them, and the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Metra Chem Corp. v. Commissioner, 88

T.C. 654, 662 (1987); Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), aff'd, 651 F.2d 1233 (6th Cir. 1981).

Petitioners failed to establish that their reliance on the return preparers was reasonable or in good faith. Thus, on the record presented, we are unable to conclude that petitioners acted with reasonable cause and in good faith within the meaning of section 6664(c)(1). Accordingly, petitioners are liable for the accuracy-related penalty under section 6662(a) for each year in issue.

III. Spousal Relief

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015. Except as otherwise provided in section 6015, the taxpayer bears the burden of proving his or her entitlement to relief. Rule 142(a); Porter v. Commissioner, 132 T.C. 203, 210 (2009); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

There are three types of relief available under section 6015. In general, section 6015(b) provides full or apportioned relief from joint and several liability for

understatements of tax on a return, section 6015(c) provides apportioned relief in respect of a deficiency to taxpayers who are divorced or separated,[5] and in certain circumstances section 6015(f) provides equitable relief from joint and several liability if relief is not available under subsection (b) or (c).

A.  Section 6015(b)

To be eligible for relief under section 6015(b), the requesting spouse must establish, inter alia, that the understatement of tax is attributable to erroneous items of the nonrequesting spouse and, in signing the return, the requesting spouse "did not know, and had no reason to know" of the understatement of tax.  Sec. 6015(b)(1)(B) and (C).

The understatements of tax on petitioners' joint returns for the years in issue are in large part attributable to the disallowance of substantial deductions for casualty losses and "other expenses" petitioners reported on Schedules A and business expenses they reported on Schedules C.[6]  On the record presented, we

[5]Petitioners were not divorced or legally separated at the time Mrs. Cole elected to claim spousal relief, and they were continuously residing in the same household during all relevant periods.  Therefore, Mrs. Cole is not eligible for relief under sec. 6015(c).  See sec. 6015(c)(3)(A)(i).

[6]As previously mentioned, petitioners concede that they are not entitled to deductions for various expenses reported on Schedules C for each of the years in issue, and they are not entitled to deductions for "other expenses" reported on

(continued...)

cannot say that the understatements are attributable in whole or in part to erroneous items of Mr. Cole alone.  In short, Mrs. Cole was a participant in the ongoing litigation with the City of Baltimore in which petitioners were seeking damages related to flooding in their basement, and she did not offer any testimony or other evidence that she was unaware of the transactions giving rise to any of the disallowed deductions reported on Schedules A and C.  Thus, we conclude that the erroneous items are attributable to both petitioners.

Moreover, we conclude that Mrs. Cole had reason to know of the understatements of tax within the meaning of section 6015(b)(1)(C).  A spouse seeking relief under section 6015(b) has reason to know of the understatement "if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the * * * understatement."  Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989).  A taxpayer has reason to know of an understatement if she had a duty to inquire and failed to satisfy that duty.  Id. A joint tax return reporting a large deduction that significantly reduces a couple's tax liability generally puts both spouses on notice that the return may contain an understatement.  See Levin v. Commissioner, T.C. Memo. 1987-67.

---

[6](...continued)
Schedules A for 2007 and 2008.

Although Mrs. Cole did not review the returns in any detail when they were presented to her for signature, she nevertheless is charged with constructive knowledge of their contents. See Price v. Commissioner, 887 F.2d at 965-966; see also Von Kalinowski v. Commissioner, T.C. Memo. 2001-21. A spouse cannot obtain relief under section 6015 in a case involving disallowed deductions "'by simply turning a blind eye to--by preferring not to know of--facts fully disclosed on a return, of such a large nature as would reasonably put such spouse on notice that further inquiry would need to be made'". Price v. Commissioner, 887 F.2d at 965 (quoting Levin v. Commissioner, T.C. Memo. 1987-67).

Petitioners claimed large deductions for each of the years in issue which served to offset their wage income and resulted in claims for refunds. Considering all the facts and circumstances, we conclude that Mrs. Cole was obliged to inquire further and she failed to do so. See, e.g., Wiener v. Commissioner, T.C. Memo. 2008-230. As a result, we hold that Mrs. Cole does not meet the requirements of section 6015(b)(1)(B) and (C), and she does not qualify for relief from joint and several liability under section 6015(b).

B. Section 6015(f)

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint liability, where relief is not available under section 6015(b) or (c), if,

taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency. As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying Rev. Proc. 2000-15, 2000-1 C.B. 447, that are used in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency. Although the Court consults these guidelines when reviewing the Commissioner's denial of relief, see Washington v. Commissioner, 120 T.C. 137, 147-152 (2003), we are not bound by them inasmuch as our analysis and determination ultimately turns on an evaluation of all the facts and circumstances, see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).[7]

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth seven threshold conditions that must generally be satisfied before the Commissioner will consider a request for equitable relief under section 6015(f). Rev. Proc. 2003-61, sec. 4.01(7),

---

[7]On January 5, 2012, the Commissioner issued Notice 2012-8, 2012-4 I.R.B. 309, announcing that a proposed revenue procedure updating Rev. Proc. 2003-61, 2003-2 C.B. 296, will be forthcoming. That proposed revenue procedure, if finalized, will revise the factors that the Commissioner will use to evaluate requests for equitable relief under sec. 6015(f). Consistent with the Court's approach in Sriram v. Commissioner, T.C. Memo. 2012-91, we have evaluated the record in this case against the factors set forth in Rev. Proc. 2003-61, supra, in view of the fact that the revenue procedure proposed in Notice 2012-8, supra, is not final.

requires that the income tax liability from which the requesting spouse seeks relief be attributable to an item of the "nonrequesting spouse", unless one of the enumerated exceptions applies, which none does in this case.

As discussed above, Mrs. Cole failed to show that the understatements of tax for the years in issue are attributable to erroneous items of Mr. Cole or that he was evasive or somehow attempted to deceive her with regard to the disputed deductions.  In the light of all the facts and circumstances, we conclude that Mrs. Cole is not entitled to relief from joint and several liability for the years in issue pursuant to section 6015(f).

To reflect the foregoing,

Decision will be entered under

Rule 155.